| iPETERS, Judge.
The plaintiffs, Herbert J. Ortego, Jr., and Joy Roberie Ortego, brought this action to recover damages for the wrongful death of their son, Jay Ortego. They named as defendants, Dane St. Cyr and his employer, Roy Motors, Inc.; the State of Louisiana, through the Louisiana State Police; and Harold Guidry and Michael Ardoin, two Louisiana State Police troopers. The alleged liability of the state arises as a result of the employment relationship existing between the state and the state troopers. The trial on the merits was bifurcated with a jury trying the issue of fault as to St. Cyr and his employer and the trial judge trying the issue of fault as to the troopers and the State of Louisiana. The jury found St. Cyr and Roy Motors, Inc. without fault in causing the accident, and the trial judge found the troopers and the State of Louisiana sixty percent at fault. The plaintiffs, the troopers, and the State of Louisiana have appealed.
DISCUSSION OF THE RECORD
The accident giving rise to this litigation occurred in St. Landry Parish on Interstate Highway 49 (1-49) between Opelousas and Lafayette, Louisiana, sometime after midnight on February 26, 1989. Jay Ortego, who was a resident of Opelousas, Rleft his home in the early evening of February 25, 1989, to meet some friends and go to Lafayette for the evening. He and his friends first went to Shanahan’s, a nightclub in Lafayette, and began drinking. Later in the evening, they went to Scandals, another Lafayette *782 nightclub, where they continued to drink. Ortego and another member of his group were asked by the management to leave Scandals, and the rest of the group followed. Ortego and his friends then returned to Shanahan’s where, according to one member of the group, a discussion was had concerning driving Ortego home because of his intoxicated condition. Before this could be arranged, Ortego slipped away from the group and began driving north on 1-49 back to Opelousas.
About the time Ortego left Shanahan’s, the driver of a pickup truck traveling north on I-49 lost control of his vehicle. The pickup truck rolled over into the median separating the northbound and southbound lanes of the interstate, finally coming to rest near the inside shoulder of the northbound lane. A truck driver initially stopped to assist the driver of the pickup and placed two flares in the road as a warning device.
Louisiana State Trooper Michael Ardoin and his shift supervisor, Lt. Harold Guidry, were dispatched to the scene of this accident and arrived at approximately 12:45 A.M. Arriving first, Lt. Guidry parked his vehicle on the left side of the northbound lane of 1-49 and activated a revolving red light on the front dash of his patrol car. Trooper Ardoin arrived soon thereafter and parked his patrol car behind and slightly to the right of Lt. Guidry’s vehicle and activated the revolving blue lights on his rear deck and front dash. Lt. Guidry’s vehicle was located such that its left tires were approximately one foot onto the left shoulder of the interstate whereas Trooper Ardoin’s vehicle was situated approximately four to five feet from the center line of the highway. By placing the patrol units in this alignment, the emergency lights of both were visible to oncoming traffic. Lt. Guidry also placed four additional flares on the highway behind Trooper Ardoin’s vehicle. These were in a straight line but angled ¡3forward and to the right so as to channel oncoming traffic into the right lane. Additionally, the headlights and flashers of both vehicles were on, making the accident scene visible for at least one-half mile.
One of the troopers called for an ambulance and a wrecker. Roy Motors, Inc. responded to the call for a wrecker and dispatched its employee, Dane St. Cyr, to the scene. When St. Cyr arrived at the scene, he was driving a large white wrecker, which was new and in good repair. It was equipped with a revolving amber beacon light approximately one foot in diameter located on top of the cab, two large white flood lights located high on both sides of the vehicle, two spotlights located low on each side, cab lights, and side marker lights, all of which were illuminated as St. Cyr began cleaning up the debris from the wreck and removing the overturned pickup from the median.
After he had righted the overturned pickup, St. Cyr backed his wrecker to the front of the pickup to connect it for towing. At this point, the rear of the wrecker was very close to the western shoulder of the northbound lane. The remainder of the wrecker was situated in a slightly northeast direction across the northbound lanes of 1^19. Due to its size, the front portion of the wrecker extended into the right lane.
Within a minute after St. Cyr exited the wrecker to make the connection to the pickup truck, Lt. Guidry observed Ortego traveling north on 1-49 in the left lane. Lt. Guidry was standing on the left side of the highway near the wrecker directing traffic onto the eastern shoulder and around the emergency vehicles. He realized that Ortego was not responding to the emergency situation in that Ortego neither slowed down nor moved to the outside portion of the highway. He shouted a warning to Trooper Ardoin who was standing south of him on the left side of the highway and, therefore, closer to the Ortego vehicle. Both officers waved their flashlights at Ortego and shouted warnings. Ortego, without slowing, moved into the right lane and drove straight into pthe side of the wrecker. An exterior gasoline tank of the wrecker exploded, creating a fireball that engulfed both vehicles. The troopers pulled Ortego from the burning wreck, but he was pronounced dead upon arrival at the local hospital. An analysis of blood drawn from Ortego disclosed that he was driving with a blood alcohol concentration of 0.14 percent by weight, based on grams of alcohol per one hundred cubic centimeters of blood.
*783 The jury responded in the negative to the following interrogatories:[1]
1. Do you find that the defendant, Dane St. Cyr, was negligent, and such negligence was a legal cause of this accident?
2. Do you find that the defendant, Roy Motors, Inc., was negligent, and such negligence was a legal cause of this accident?
The trial judge then concluded that Trooper Ardoin and Lt. Guidry were negligent and that their negligence was a legal cause of the accident. The trial court determined that the troopers were sixty percent at fault with the remaining forty percent being attributed to Ortego. This judgment is the basis of this appeal.
OPINION
Trooper Ardoin, Lt. Guidry, and the State of Louisiana contend that the trial judge erred in finding them at fault in causing this accident that resulted in Jay Ortego’s death. In the alternative, they contend that the trial court erred in assigning sixty percent of the fault to them. Mr. and Mrs. Ortego appeal the jury’s verdict finding no fault on the part of Dane St. Cyr and Roy Motors, Inc.
STANDARD OF REVIEW
Courts of appeal are to review findings of fact under the manifest error or clearly wrong standard. Rosell v. ESCO, 549 So.2d 840 (La.1989). This court’s assignment |sis not to determine whether or not the trier of fact was right or wrong but rather to determine whether the fact finder’s conclusion was a reasonable one. Stobart v. State, Dep’t of Transp. & Dev., 617 So.2d 880 (La.1993). Even if we conclude that our determinations of fact are more reasonable, “reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony.” Id. at 882.
This circuit has applied the rule that when conflicting findings of fact arise between the decisions of the jury and the trial judge in a bifurcated trial, the court of appeal should normally resolve these conflicts by examining the record as a whole. Hasha v. Calcasieu Parish Police Jury, 94-705 (La. App. 3 Cir. 2/15/95); 651 So.2d 865, writs denied, 95-0667 (La.4/28/95); 653 So.2d 592 and 95-0676 (La.4/28/95); 653 So.2d 593. However, in this case, there is no conflict between the decisions of the jury and the trial judge, and this court is limited to a manifest error evaluation of the factual findings. Id.
Fault of St. Cyr and Roy Motors, Inc.
Mr. and Mrs. Ortego contend that the jury erred in finding St. Cyr and his employer free from fault in causing this accident. The appropriate method to resolve questions of negligence in an accident situation is to apply the duty-risk analysis. Theriot v. Lasseigne, 93-2661 (La.7/5/94); 640 So.2d 1305. In applying this analysis, four questions must by addressed:
(1) Was the conduct in question a cause-in-fact of the resulting harm?
(2) What, if any, duties were owed by the respective parties?
(3) Were the requisite duties breached?
(4) Was the risk and harm-caused within the scope of protection afforded by the duty breached?
Faucheaux v. Terrebonne Consol. Gov’t, 615 So.2d 289, 292 (La.1993).
The cause-in-fact inquiry requires a “but-for” evaluation. That is to say, would the accident and resulting injury have occurred “but-for” the conduct of a particular 16defendant. Id. In this case, the accident obviously would not have occurred if St. Cyr’s wrecker had not been blocking the right lane of travel where the impact occurred. Thus, the eause-in-fact inquiry is satisfied.
As to the duty question, St. Cyr and Roy Motors, Inc. argue that the wrecker’s classification as an emergency vehicle gave St. Cyr statutory authority to park it on the main *784 part of the highway pursuant to La.R.S. 32:24(B)(1). While that statute does allow the driver of an authorized emergency vehicle to park his vehicle on the traveled part of the highway, that authorization “shall not relieve the driver ... from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.” La.R.S. 32:24(D). Even applying La.R.S. 32:24 to the facts in this case, it is clear that St. Cyr had a duty to exercise due care for the safety of oncoming traffic and breached that duty by blocking both northbound lanes of 1-49. The act of blocking these lanes at night on a high-speed roadway was inherently dangerous. Additionally, the uncontroverted testimony was to the effect that this act was unnecessary to the emergency function the wrecker was performing. If the jury concluded otherwise, such a conclusion was clearly wrong.
However, the interrogatory posed to the jury was all inclusive. That is to say, the jury answered all of the duty-risk questions in one interrogatory. In doing so, it could have concluded that the risk of the harm which actually occurred was not within the scope of protection afforded by the duty which was breached. The evidence presented clearly supports a finding that Jay Ortego was at fault in causing this accident. He had a duty to drive prudently. This duty includes the duty to maintain control of his vehicle and to maintain a proper lookout for hazards. Paige v. Commercial Union Ins. Co., 512 So.2d 507 (La.App. 3 Cir.), writ denied, 513 So.2d 823 (La.1987). The accident scene was illuminated with every available light. James LT. Meche testified that he passed through the accident scene a few minutes before Ortego and was able to observe the emergency lights at least one-half mile away. He was also able to observe one of the troopers, a patrol car, and the wrecker. Despite all of the existing warnings, Ortego failed to reduce his speed and took little or no evasive action prior to impact. Trooper Ardoin estimated Ortego’s speed to be approximately sixty to sixty-five miles per hour when the vehicle passed him, and the plaintiffs’ expert estimated the speed at impact to be fifty miles per hour. The Ortego vehicle struck the wrecker at the point where it was the most illuminated. Medical tests revealed that Ortego was operating his vehicle in violation of the criminal laws of this state in that he was driving while under the influence of alcoholic beverages in violation of La.R.S. 14:98. A finding by the jury that this risk and harm were not that contemplated by the duty breached and that the legal cause of the accident was Ortego’s negligence is not clearly wrong. Therefore, we affirm the jury verdict as to its finding of no fault on the part of St. Cyr and Roy Motors, Inc.
Fault of Trooper Ardoin, Lt. Guidry, and the State of Louisiana
The trial judge allocated sixty percent of the fault in causing this accident to Trooper Ardoin and Lt. Guidry. He based this liability on his conclusion that the configuration of control devices put in place by the officer’s could have lulled a reasonably prudent driver into a false sense of security that the right lane of travel was unimpeded and open to traffic.
The state contends that the trial judge, should have applied the “reckless disregard” standard of La.R.S. 32:24(D), rather than the negligence standard. We disagree in that the duty to properly control an accident scene is an independent duty. Curry v. Iberville Parish Sheriffs Office, 405 So.2d 1387 (La.App. 1 Cir.1981), writs denied, 410 So.2d 1130, 1135 (La.1982). However, even in applying the negligence standard, we find that the trial judge erred in attributing fault to the two troopers in | ¡¡causing this accident.
Both officers testified that the lighting configuration was set up to protect the left lane of travel and to channel the oncoming traffic into the right lane. However, St. Cyr neither sought instruction from the troopers concerning his operation nor informed them that he was going to block the right lane. When the wrecker moved into a position blocking the right lane, Lt. Guidry immediately moved into a position to direct traffic around the wrecker and onto the right shoulder. The accident occurred only seconds thereafter.
*785 Again, the legal cause of this accident was the negligence of Ortego, not the negligence of the officers. We find it difficult to know what else the officers could have done in the few seconds prior to the accident to avoid this tragedy. In controlling an accident scene, the Louisiana State Police cannot protect against all contingencies. Particularly, they cannot be held liable for injuries to one who fails to observe what he should have observed for a distance of one-half mile, who ignores obvious warnings to reduce his speed, and who chooses to violate the criminal laws by operating his vehicle while under the influence of alcoholic beverages. Therefore, we conclude that the trial judge erred in finding Trooper Ardoin and Lt. Guidry at fault in causing this accident.
DISPOSITION
For the foregoing reasons, we affirm the jury’s finding of no fault on the part of Dane St. Cyr and Roy Motors, Inc. We reverse the trial judge’s finding of fault on the part of Trooper Michael Ardoin, Lt. Harold Guidry, and the State of Louisiana and render judgment dismissing the claims of Herbert J. Ortego, Jr., and Joy Roberie Ortego. All costs of this appeal are taxed against Hebert J. Ortego, Jr., and Joy Roberie Ortego.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
WOODARD, J., dissents and assigns written reasons.
GREMILLION, J., dissents for the reasons assigned by WOODARD, J.

. The jury was also presented with interrogatories concerning the fault of Trooper Ardoin and Lt. Guidry and concluded that they were not at fault in causing the accident. However, the jury did not, as a matter of law, have the right or duty to determine the fault of these officers, and the jury's verdict on these issues cannot be considered. Lemire v. New Orleans Pub. Serv., Inc., 458 So.2d 1308 (La.1984).